## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE BIANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 0538 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| HULTSTEG AB, DIAL INDUSTRIAL | ) | |
| SALES, INC., and TELESTEPS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Christine Bianco filed this suit, invoking the diversity jurisdiction of this Court, seeking recovery for an injury she suffered on November 2, 2002, when she fell while using a Telesteps Model 326 telescopic ladder ("the Model 326 ladder"). In her three-count amended complaint, Ms. Bianco asserts strict product liability claims against (1) Hultsteg AB (which admittedly manufactured the Model 326 ladder), and (2) Dial Industrial Sales, Inc., and Telesteps, Inc. (collectively, "Dial"), which admittedly distributed, marketed and sold that model ladder. The case has been assigned to his Court for all proceedings, including entry of final judgment, pursuant to the consent of the parties and 28 U.S.C. § 636(c) (doc. ## 128-29). The jury trial of this matter is set to begin on March 9, 2009.

Presently pending before the Court are a number of motions *in limine* that the parties have filed (doc. ## 98-101, 103, 106-118). Our rulings on those motions *in limine* are set forth below.

# I.

Plaintiff has filed 13 motions *in limine*. We address each of them in turn.

## A.

**Plaintiff's Motion *In Limine* No. 1.** In this omnibus motion *in limine*, plaintiff seeks to bar the defense from offering evidence or argument on 20 different matters (doc. # 106). Only two of those matters are in dispute.

*First*, in paragraph 2 of her motion, plaintiff asks us to bar any evidence or argument concerning the pecuniary circumstances of any parties. Dial opposes that request in one limited respect. Dial says that it "recently learned" that Hultsteg has been dissolved as a business entity. As a result, Dial asks for the opportunity to explain at trial why the jury will not hear testimony from a corporate representative of Hultsteg (doc. # 135: Dial's Resp. to Motion *In Limine* No. 1, at 1). Plaintiff replies that Dial has not disclosed any witness who would testify that Hultsteg is no longer in business; that whether Hultsteg remains in business or is solvent is not relevant to the liability or damages claims in the case; and that allowing evidence concerning Hultsteg's financial circumstances might create jury sympathy for Hultsteg that would be unfairly prejudicial to plaintiff (Pl.'s Reply at 1-2).

We are unpersuaded by Dial's argument. We are left to wonder why it is that Dial only "recently learned" of Hultsteg's dissolution when the same attorneys who represent Dial also represent Hultsteg.[1] Dial also fails to explain why it is unable to present trial testimony from a Hultsteg corporate representative notwithstanding the dissolution. We are left to guess about

---

[1] We also note that the defense motions *in limine* filed on December 9, 2008, listed only Dial as the movant and not Hultsteg. This fact suggests that, perhaps, by early December 2008, Dial knew of Hultsteg's dissolution, even though that fact apparently was revealed to plaintiff only when Dial filed the January 9, 2009, response to this motion *in limine*.

whether any Hultsteg representative is within the subpoena power of the Court and could be compelled to testify and, if not, why a Hulsteg representative would not voluntarily appear to testify about its product. We are likewise left in the dark about whether any Hultsteg representatives were deposed during the case and, if so, why their deposition testimony cannot be used at trial.

In any event, even if a Hultsteg corporate representative is unavailable to testify about its manufacture of the product, we do not think it fair to allow evidence of Hultsteg's financial circumstances to be presented through some other witness (assuming there is a witness to offer that testimony in a way that would avoid the rule against hearsay). Of course, if any party believes that Hultsteg is no longer a proper defendant in the case because of its dissolution, that party is free to move to dismiss Hultsteg on that basis. However, we see no reason to allow one-sided testimony concerning Hultsteg's financial circumstances. Accordingly, we grant plaintiff's motion in paragraph 2 of Motion No. 1 to prevent any reference to the wealth, poverty or pecuniary circumstances of any party.

*Second*, in paragraph 19 of her motion, plaintiff seeks to bar any evidence or argument that plaintiff manufactured this lawsuit to explain the injury she sustained. Dial objects to this request, and plaintiff has offered no argument in reply. We agree with Dial that this subject is a proper area of inquiry and argument. Accordingly, this aspect of Motion *In Limine* No. 1 is denied.

All other aspects of this motion *in limine* (paragraphs 1, 3-18, and 20) are unopposed. We therefore grant those portions of Motion *In Limine* No. 1, along with paragraph 2 of the motion, with the understanding that the rulings apply equally to all parties.

## B.

**Plaintiff's Motion *In Limine* No. 2.** Plaintiff seeks to bar Dial's retained liability expert, Professor Joseph Musto, from testifying on the ground that he is not qualified as an expert under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-90 (1993) (doc. # 107). Plaintiff acknowledges that Professor Musto is a Professor of Engineering at the Milwaukee School of Engineering, but argues that he is unqualified because his only experience as an expert witness has been testifying for manufacturers of ladders; he has never assisted or consulted in the design or manufacture of a ladder; and he has not done any research on ladders in connection with his work at the Milwaukee School of Engineering (Pl.'s Motion *In Limine* No. 2, at 1-2).

Federal Rule of Evidence 702 states that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Professor Musto's resume reveals that he has a Bachelor's of Science Degree, a Master's Degree, and a Ph.D. in Mechanical Engineering, is a licensed professional engineer in the state of Wisconsin, and has taught at the Milwaukee School of Engineering's Department of Mechanical Engineering for ten years. He has been qualified as an expert witness in cases involving ladders at least five times. While plaintiff certainly may advise the jury that Professor Musto lacks experience in the design and manufacture of ladders and that he only has testified for defendants in ladder cases, those are matters that go to the weight and not the admissibility of his testimony. *See* Comments to 2000 Amendments to Fed. R. Evid. 702 (noting that under *Daubert*, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system," and that "the rejection of expert testimony is the exception rather than the rule" even after *Daubert*). *See also Daubert*, 509 U.S. at 595 ("[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

4

and appropriate means of attacking shaky but admissible evidence"). We therefore deny plaintiff's Motion *In Limine* No. 2.[2]

## C.

**Plaintiff's Motion *In Limine* No. 3.** Plaintiff seeks to bar Leonard Silverman, Dial's corporate representative, from offering expert testimony or opinions (doc. # 108). Plaintiff identifies two areas of potential opinion testimony that are the target of her motion.

*First*, plaintiff seeks to bar Mr. Silverman from testifying concerning the manner in which Ms. Bianco was injured (Pl.'s Motion *In Limine* No. 3, at 1). In its response (doc. # 137: Defs.' Resp. to Motion *in Limine* No. 3, at 2), Dial states that it will not ask Mr. Silverman to opine as to how the accident occurred. Accordingly, we grant plaintiff's Motion *In Limine* No. 3 insofar as it seeks to bar opinion testimony by Mr. Silverman on the subject of how the accident occurred.

*Second*, plaintiff seeks to bar Mr. Silverman from offering any opinion testimony regarding the appropriateness of the design of the ladder in issue (Pl.'s Motion *In Limine* No. 3, at 2-3). Plaintiff argues that Mr. Silverman, while educated as an engineer, has no experience as an engineer with respect to ladder design (*Id.* at 3). As we have explained in denying the motion to bar expert testimony from Professor Musto, the lack of experience in design work does not, without more, render Mr. Silverman unqualified to testify about ladder design. Thus, we deny Motion *In Limine* No. 3 insofar as it seeks to bar Mr. Silverman from testifying concerning the appropriateness of the design of the ladder at issue.

---

[2]In her motion, plaintiff also argues that Professor Musto's testimony must be barred because (1) there is no evidence linking his opinions "to sound science conducted in the normal course of his work as an engineer"; and (2) there is "too great an analytical gap between the data and Musto's proffered opinions" (Pl.'s Motion *In Limine* No. 2, at 3-4). Plaintiff failed to develop this argument in the motion by explaining the opinions she criticizes and the "analytical gap" she perceives. Moreover, plaintiff elected not to file a reply in support of the motion. Accordingly, we reject this undeveloped argument without further discussion.

However, Dial states that it plans to ask Mr. Silverman "numerous questions that go to the issue of reasonable *manufacture* and design" (Dial's Resp. at 2) (emphasis added). As we explain below in our ruling in Motion *In Limine* No. 4, Dial's care and reasonableness (or lack thereof) in the manufacturing process is not relevant to plaintiff's strict liability claims. Thus, we make clear here that evidence of care in the manufacturing process will not be allowed, either through Mr. Silverman or any other defense witness, unless plaintiff somehow opens the door to that testimony.

**D.**

**Plaintiff's Motion *In Limine* No. 4.** Ms. Bianco asks the Court to exclude evidence that care was used in the defendants' manufacturing and quality control processes (doc. # 109). Specifically, plaintiff seeks to prevent defendants from presenting evidence that "their manufacturing process and quality control process were so precise that no mistakes could have been made in the manufacture of the ladder at issue" (Pl.'s Mot. *In Limine* No. 4, at ¶ 1). In strict liability suits, a manufacturer is liable for unreasonably dangerous defects "no matter how adequate and careful its quality control may have been." *Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1141 (Ill. 2005). In other words, if a product is unreasonably dangerous, it is irrelevant whether the manufacturer used "due care" in its creation. *Frank v. Edward Hines Lumber Co.*, 761 N.E.2d 1257, 1264 (Ill. App. Ct. 2001) (citing IPI Civil No. 400.10).

Dial does not dispute this well-settled law. Rather, Dial argues that it seeks to offer evidence of care in the manufacturing and quality control processes to show the unlikelihood that a manufacturing defect occurred in this case, and not to prove due care in the manufacturing process (doc. # 138: Dial's Resp. to Motion *In Limine* No. 4, at 3). We recognize, as Dial points out (*id.*), that evidence inadmissible for one purpose may be relevant and admissible for another. But, we find

the distinction Dial seeks to draw too thin to prevail. While Dial cites two decisions applying Louisiana and Tennessee law to support the relevance of care in the manufacturing process in a strict liability case involving alleged manufacturing defects (*id.* at 2), Dial offers no Illinois law adopting the distinction it advances here. Given the well-established Illinois law stating unequivocally the irrelevance of care in the manufacturing process in a strict liability case, expressed both in Supreme Court decisions and in pattern jury instructions, we do not find the authorities offered by Dial persuasive. We therefore grant plaintiff's Motion *In Limine* No. 4.[3]

### E.

**Plaintiff's Motion *In Limine* No. 5.** Plaintiff seeks to bar testimony by Professor Musto that Ms. Bianco slipped and fell, hitting the ladder and causing it to break into two pieces (doc. #110). Plaintiff argues that this opinion testimony is speculative and fails to satisfy the requirements of *Daubert* (Pl.'s Motion *In Limine* No. 5, at 1-2). We disagree.

Professor Musto performed an inspection of the original Model 326 ladder involved in this case in August 2005, taking photographs and measurements. He then built an exemplar ladder at the scene and conducted load tests on a second exemplar ladder (doc. # 139: Defs.' Resp. to Motion *In Limine* No. 5, Ex. 1 (Musto Dep.) at 17, 22-23). Professor Musto performed these tests and inspections to understand "how and why" the ladder failed (*Id.* at 29). Through these load tests, Professor Musto calculated that the ladder could hold 1,000 pounds with one lock disengaged (*Id.* at 125). Based on results of the load test and his inspection of the accident ladder, Professor Musto concluded that Ms. Bianco would have to have put some additional "dynamic" force or impact onto

---

[3]This ruling extends to any testimony or other evidence that Walmart approved of the manufacturing process. Any such evidence not only is irrelevant for the reasons stated above, but if offered through Dial witnesses (as Dial apparently seeks to do), it also would likely run afoul of the rule barring hearsay evidence.

7

the ladder, such as falling on the ladder, to cause the ladder to fracture in the way that it did (*Id.* at 94-97,132-33).

Plaintiff does not contest Professor Musto's qualifications and expertise or the principles and methods he used in testing the ladder. Plaintiff provides no support for her argument that Professor Musto's opinion as to whether plaintiff fell on the ladder was pure speculation. Indeed, plaintiff ignores that her own expert agreed that "Ms. Bianco fell on the ladder, and because some portion of her body hit the ladder as she fell, it broke" (Defs.' Resp., Ex. 2 (Ver Halen 03/04/08 Dep.) at 15). The point the experts appear to disagree on is what caused Ms. Bianco to fall in the first place. But, that disagreement provides no basis to exclude Professor Musto's opinion. The Court finds that Professor Musto's opinion on this point satisfies *Daubert*, and we therefore deny plaintiff's motion to bar his testimony as to the cause of the ladder's fracture.

### F.

**Plaintiff's Motion *In Limine* No. 6.** Plaintiff seeks to bar defendant from offering any evidence or argument that Ms. Bianco assumed the risk of injury (doc. # 111). Plaintiff argues that any negligence on her part does not constitute assumption of risk under Illinois law, and there is no evidence that plaintiff "had actual knowledge of the condition which made the ladder unreasonably dangerous" or "understood and appreciated the risk of injury from that condition and proceeded to use the ladder at issue" (Pl.'s Motion *In Limine* No. 6, at 2).

Dial has not pled assumption of risk as an affirmative defense. Thus, Dial may not argue or suggest to the jury that Ms. Bianco assumed the risk of injury by her conduct in using the ladder. That said, we agree with Dial that evidence concerning plaintiff's conduct in using the ladder "is admissible to establish a defendant's theory of defense that the product was not the proximate cause

8

of the plaintiff's injuries" (doc. # 140: Defs.' Resp. to Motion *In Limine* No. 6, at 1) (quoting *Korando v. Uniroyal Goodrich Tire Co.*, 637 N.E.2d 1020, 1025 (Ill. 1994)). It will be for the jury to determine whether Ms. Bianco's conduct in using the ladder, rather than an alleged unreasonably dangerous design of the ladder, was a proximate cause of her fall. Accordingly, we grant plaintiff's Motion *In Limine* No. 6, but only insofar as we will bar Dial from arguing that Ms. Bianco assumed the risk; we will not bar evidence of Ms. Bianco's conduct or knowledge in using the ladder.

### G.

**Plaintiff's Motion *In Limine* No. 7.** Plaintiff seeks to bar defendant from offering evidence or argument that the Model 326 ladder was "state of the art" when it was made (doc. # 112). Dial agrees that state of the art is not a defense to strict liability (doc. # 141: Defs.' Resp. to Motion *In Limine* No. 7, at 2), as it must: the case law precludes Dial from arguing otherwise. *See, e.g., Walker v. Trico Mfg. Co.*, 487 F.2d 595, 600 (7th Cir. 1974); *Murphy v. Chestnut Mountain Lodge, Inc.*, 464 N.E.2d 818, 823 (Ill. App. Ct. 1984). However, Dial argues that it should be permitted to offer state of the art evidence to attempt to rebut any evidence or argument by plaintiff that the existence of feasible alternative designs shows that the ladder was unreasonably dangerous (Defs.' Resp., at 2-3); or, in the formulation that the Illinois Supreme Court prefers, that the ladder was "not reasonably safe." *See Cunningham v. McNeal Memorial Hospital*, 266 N.E.2d 897, 903 (Ill. 1970).

Plaintiff concedes (as she must) that Dial has the right to challenge plaintiff's evidence of feasible alternative designs, but she argues that Dial may not do so through the introduction of state of the art evidence (doc. # 153: Pl.'s Reply in Support of Motion *In Limine* No. 7, at 1). Plaintiff's attempted distinction runs headlong into Illinois case law holding that when a plaintiff in a strict liability case offers evidence of feasible alternative designs, "the defendant may then introduce state

of the art type evidence as rebuttal evidence on that issue." *Connolly v. Gen. Motors Corp.*, 540 N.E.2d 370, 386-87 (Ill. App. Ct. 1989). That is because "'feasibility includes not only the elements of economy, effectiveness and practicality[,] but also the technological possibility" viewed in the present state of the art "as shown by the opinions of experts or by the existence of safety devices on other products. . . . ." *Murphy*, 464 N.E.2d at 823 (quoting *Sutkowski v. Universal Marion Corp.*, 281 N.E.2d 749, 753 (Ill. App. Ct. 1972)). We therefore deny plaintiff's Motion *In Limine* No. 7 insofar as it seeks to bar Dial from offering state of the art evidence to rebut evidence of alternative designs offered by plaintiff.

In her motion *in limine*, plaintiff also argues that Dial should be barred from offering evidence or arguing that the Model 326 ladder: (1) was similar to or employed the same technology and safety devices as competitive products or (2) was a standard telescopic ladder used in the industry (Pl.'s Motion *In Limine* No. 7, at 1). In response, Dial disavows any intent to offer such evidence or argument (Defs.' Resp., at 2-3). Therefore, we grant plaintiff's Motion *In Limine* No. 7 insofar as it seeks to bar Dial from offering that evidence or argument.

## H.

**Plaintiff's Motion *In Limine* No. 8.** Plaintiff seeks to bar Dial from offering evidence or argument that alternative designs or equipment suggested by her expert for the Model 326 ladder were too expensive to be feasible to supply them as standard equipment (doc. # 113). Plaintiff argues that any defense based on a cost justification would undermine Illinois law that places a duty on a defendant "to utilize alternative designs or alternative equipment if it was foreseeable" that injury would result from use of existing equipment and it would not be "a burden" on defendant to

10

use alternative designs and equipment (Pl.'s Motion *In Limine* No. 8, at 1-2 (citing *Ziemba v. Mierzwa*, 566 N.E.2d 1365, 1370 (Ill. 1991).

However, one aspect of the feasibility of a particular alternative design is its economy. *Sutkowski*, 281 N.E.2d at 753 (feasibility includes "the elements of economy, effectiveness and practicality"); *see also Lolie v. The Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974) (the feasibility of alternative design involves consideration of "cost, practicality and technological possibility"). Thus, evidence that a proposed design alternative would be costly (or not) is relevant to its feasibility.

Plaintiff also argues that Dial has failed to provide evidence that alternative designs or alternative equipment were too expensive to supply as standard equipment (Pl.'s Mot., at 2). We do not know from the discovery record what evidence has been developed concerning any alternative designs or equipment proposed by plaintiff or their cost. Plaintiff's arguments concerning defendant's lack of evidence (or foundation for evidence) concerning whether alternative designs or equipment would be expensive are matters better assessed at trial than on the present record. We therefore deny plaintiff's Motion *In Limine* No. 8, but without prejudice to plaintiff raising this issue at trial.

I.

**Plaintiff's Motion *In Limine* No. 9.** Plaintiff seeks to bar Dial from offering evidence or argument that there were an insignificant number of prior accidents or incidents involving the design of the Model 326 ladder (doc. # 114). It appears that the witness through whom Dial would offer that evidence is Mr. Silverman. Mr. Silverman's deposition testimony, as cited by the parties, suggests that although Dial did not keep contemporaneous records of reports of accidents or

11

incidents, Mr. Silverman has personal knowledge of complaints concerning the Model 326 ladder (*see, e.g.,* Pl.'s Motion *In Limine* No. 9, at 2). Plaintiff can cross examine Mr. Silverman about the strength of his recollection, and the jury will be entitled to consider the credibility of that recollection, unaided as it is by any review of records. However, the fact that Mr. Silverman's knowledge is based solely on recollection does not provide a sound basis to exclude such testimony entirely. Accordingly, we deny plaintiff's Motion *In Limine* No. 9.

## J.

**Plaintiff's Motion *In Limine* No. 10.** Plaintiff seeks to bar Dial from offering evidence or argument about Ms. Bianco's health conditions that predated the accident, including – but not limited to – vertigo, diabetes, inner ear issues, and/or neuropathies (doc. #115). Plaintiff argues that under Illinois law "a defendant must present medical testimony when it wishes to argue that the plaintiff's damages stem from a prior injury or other health condition" (Pl.'s Motion *In Limine* No. 10, at 2 (citing *Voykin v. Estate of DeBoer*, 733 N.E.2d 1275, 1280 (Ill. 2000)), but Dial has not disclosed any qualified witness to provide the evidence necessary to establish that plaintiff was suffering from other health conditions with she fell (*Id.*) at 2).

For its part, Dial argues that *Voykin* "does not apply to the present case" (doc. #144: Defs.' Resp. to Motion *In Limine* No. 10, at 2). Dial seeks to distinguish the case at bar with *Voykin* on the ground that there "defendant introduced evidence of a past injury" to "rebut a *current injury*" (*Id.*) (emphasis added). By contrast, here Dial seeks to "introduce evidence of Ms. Bianco's prior medical history to rebut *causation*" (*id.*) (emphasis added), which is relevant (*Id.* at 3). In other words, Dial seeks to offer evidence of Ms. Bianco's prior medical conditions to rebut plaintiff's evidence of

12

causation, on the ground that it provides an explanation for Ms. Bianco's fall other than a design or manufacturing defect in the ladder (doc. # 144: Dial's Resp. to Motion *In Limine* No. 10).

Illinois law holds that "for a prior injury to be relevant to causation, the injury must make it less likely that the defendant's actions caused any of the plaintiff's injuries or an identifiable portion thereof." *Voykin*, 733 N.E.2d, at 1279-80. Here, questions of Ms. Bianco's preexisting health conditions would be relevant if these same conditions could have affected her balance and made it more likely that she fell for a reason other than a defect in the ladder, because pre-existing health conditions could undermine plaintiff's claim of causation, "an essential ingredient of a tort." *Ueland v. United States*, 291 F.3d 993, 997-98 (7th Cir. 2002).

However, Ms. Bianco contends that *Voykin* requires that a defendant must introduce "expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence," unless a court determines that "a lay person can readily appraise the relationship, if any, between those injuries without expert assistance." *Voykin*, 733 N.E.2d at 1280. Plaintiff argues that the effect of these conditions would not be obvious to a lay person, and that Dial has not disclosed any expert who will testify to Ms. Bianco's conditions or how they may have affected her balance.

At the threshold, we note that plaintiff's citation to *Voykin* for this argument assumes that, in this diversity case, Illinois law governs the question of when expert testimony is necessary to prove a fact in issue. That assumption is incorrect. Evidence regarding the "nature and consequence" of a prior injury "concerns not relevance, but reliability, which is the domain of forum law." *Ueland*, 291 F.3d at 998; *see also Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) (state law expertise rule need not be applied in federal court because the Federal Rules of Evidence apply

13

exclusively). While federal law governs this issue, that does not undermine plaintiff's argument. "In federal court, no expert testimony is needed when the symptoms exhibited by the plaintiff are not beyond a layperson's grasp." *Gil*, 381 F.3d at 659. We view this federal standard as substantially the same as the Illinois state law standard set forth in *Voykin*, and so we turn to the merits of plaintiff's argument.

Dial has not stated precisely what it is about Ms. Bianco's prior medical history that it will seek to offer at trial. We would expect that Ms. Bianco, herself, would be able to testify to what medical conditions she had at the time of the accident and whether any of them affected her balance. There may be other lay witnesses who, based on their personal knowledge and observations of Ms. Bianco, also could testify to those matters. If not, then the relevance of any of Ms. Bianco's conditions would depend on a lay person being able to grasp the effect of those conditions without expert assistance; at this late stage, Dial will not be able to introduce expert evidence on the effects of vertigo, diabetes, inner ear issues, or neuropathies. The parties have not offered any authority on whether any of those conditions is such that they may be considered by a jury without the aid of expert testimony.

In these circumstances, we will enter and continue plaintiff's Motion *in Limine* No. 10. By February 16, 2009, Dial shall submit a supplemental memorandum identifying what pre-existing conditions it will seek to prove, the witness(es) who will be able to give admissible testimony as to those conditions and their relevance to causation, and any authority on the question of whether a jury may consider those conditions without expert testimony. By February 23, 2009, plaintiff shall file a memorandum in response addressing those matters.

14

**K.**

**Plaintiff's Motion *In Limine* No. 11.** Plaintiff seeks to bar any evidence of or reference to testing done by George Kyanka (doc. #116). Plaintiff argues that Mr. Kyanka's testing was "performed under different circumstances than those shown by the evidence" and "it lacks any degree of reliability" (Pl.'s Motion *In Limine* No. 11, at 1-2). Thus, plaintiff seeks to bar Professor Musto, defendants' retained liability expert, from relying on Mr. Kyanka's test results in his trial testimony, both because it is not reliable and because Professor Musto "is not able to establish that the test demonstrates what it purports to demonstrate" (*Id.*).

Mr. Kyanka performed a load test on an exemplar Model 326 ladder with approximately the same conditions that Professor Musto used in testing that he performed, except that Mr. Kyanka unlocked all of the locks on one side of the ladder beneath the applied load as opposed to just a single lock (Musto Dep. at 107). Professor Musto found Mr. Kyanka's test "interesting" because it showed that even with all of the locks unlocked, the ladder was able to withstand the load (*Id.* at 111). Professor Musto was not present for the testing (*id.* at 106), had no input into how the testing was designed or performed (*id.* at 110), and did not even know the testing was going to be performed (*Id.* at 113). Professor Musto's interaction with Mr. Kyanka has been limited to viewing a DVD and pictures of Mr. Kyanka's testing (*Id.* at 112-13, 117-18).

Mr. Kyanka has not been disclosed as a testifying expert, and Dial acknowledges that Mr. Kyanka's testing ordinarily would be inadmissible hearsay. But, Dial argues that Professor Musto may offer evidence about that testing under Federal Rule of Evidence 703, which states that an expert may base his opinion or inference on facts or data that are of a type reasonably relied upon by experts in his field, even if those facts or data are not admissible into evidence (doc. #145: Defs.'

15

Resp. to Mot. *In Limine* No. 11). However, Dial has failed to show that the DVD and photographs of Mr. Kyanka's tests are the type of data reasonably relied upon by experts in Professor Musto's field. Professor Musto has limited knowledge of Mr. Kyanka's background or his expertise to design and perform the testing (Musto Dep. at 104-05). Moreover, Professor Musto did not direct the design or performance of the testing, and he did nothing to verify either Mr. Kyanka's methodology or results.

By having certain testing done by Mr. Kyanka, a consultant who would not himself testify, Dial relieved itself of the obligation to provide a detailed report for Mr. Kyanka's work under Federal Rule of Evidence 26(a)(2)(B), because the report requirement applies only to certain testifying experts. By structuring the testing in the way it did, and keeping Professor Musto in the dark about the fact that it was even occurring, Dial also avoided subjecting Mr. Kyanka to cross examination about his work. Dial thus attempted to create a win-win situation for itself: Dial could bury the Kyanka test results if they were not to its liking, but could attempt to have Professor Musto testify about them if the results turned out as Dial hoped. However, for that strategy to work, Professor Musto would have to have done more than he did to verify and to be able to testify meaningfully about Mr. Kyanka's testing. On the record presented here, allowing Professor Musto to testify about Mr. Kyanka's testing would in substance allow him to serve as a mere mouthpiece for Mr. Kyanka, insulating Mr. Kyanka's work from meaningful cross examination. Rule 703 was not intended to permit that result. We therefore grant plaintiff's Motion *In Limine* No. 11.

### L.

**Plaintiff's Motion *In Limine* No. 12.** Plaintiff asks the Court to limit Dial's cross examination of any and all witnesses called by plaintiff to the scope of the direct examination (doc.

# 117). Plaintiff offered no explanation or argument, and filed no reply memorandum, in support of the motion. While cross examination is normally limited to the scope of the direct examination, a Court "may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b). In our view, that discretion is best exercised based on what occurs at trial and the specific circumstances presented, rather than in the vacuum of a pretrial ruling *in limine*. Accordingly, plaintiff's Motion *In Limine* No. 12 is denied.

## M.

**Plaintiff's Motion *In Limine* No. 13.** Plaintiff seeks to bar Dial from offering evidence or arguments concerning Ms. Bianco's employment file or employment records (doc. # 118). Plaintiff argues that Dial has identified no witness who can lay the foundation for admission of those records as authentic, as required by Federal Rule of Evidence 901 (Pl.'s Motion *In Limine* No. 13, at 1-2). In response, Dial concedes that it must comply with Rule 901 if Dial seeks the admission of Ms. Bianco's employment file or employment records into evidence, but argues that it "need not comply with Rule 901 merely to question Ms. Bianco about information that Dial learned through review of her employment file" (doc. # 147, Defs.' Resp. to Pl.'s Motion *In Limine* No. 13, at 1). In reply, plaintiff points out that if "plaintiff disagrees with defense counsel while she is being cross examined with information contained in her employment file, defense counsel may not impeach her with the contents of her employment file" without those records being admitted in evidence (doc. # 157, Pl.'s Reply, at 1).

We generally agree with all of these points. Even if Ms. Bianco's employment records are not in evidence, Dial certainly may examine her with respect to information it may have gleaned from those records. But, if the records are not in evidence, then Dial cannot identify employment

17

records or files as the source of that information. If Ms. Bianco's testimony is (in Dial's judgment) at variance with a document in her employment file or records, then Dial may not use the employment file or records to impeach Ms. Bianco without satisfying the authentication requirement of Rule 901 and other prerequisites to admissibility.

That said, we do not think it appropriate to grant plaintiff's motion and deprive Dial of any chance to lay a proper foundation for use of the employment files or records. For example, to the extent that a particular employment document was authored by Ms. Bianco, Dial could use her testimony to authenticate the document. There may be other permissible use of documents in the employment file, such as to refresh Ms. Bianco's recollection, that could emerge at trial. Accordingly, we deny plaintiff's Motion *In Limine* No. 13. But, in doing so, we admonish Dial that it may not make reference to or identify employment files or records to the jury without first establishing an appropriate evidentiary basis to do so, which plaintiff may challenge at trial.

## II.

We now turn to Dial's motions *in limine*. Two of the motions *in limine* are unopposed (doc. ## 100, 103). *First*, in response to Dial's motion *in limine* to bar evidence of other accidents, complaints, claims or lawsuits (doc. # 100), plaintiff agrees that its expert, Mr. Ver Halen, may not testify concerning other incidents involving the collapse of telescoping ladders (doc. # 132). We therefore grant this defense motion *in limine* and bar plaintiff – through Mr. Ver Halen or any other witness – from offering any evidence or argument concerning other accidents or incidents involving telescoping ladders.

*Second*, Dial has moved to bar Mr. Ver Halen from testifying that Ms. Bianco visually inspected the locks on the Model 326 ladder she was using at the time of the accident (doc. # 103).

18

In response, plaintiff agrees that Mr. Ver Halen will not testify to any visual inspection of the ladder by Ms. Bianco other than the inspection that Ms. Bianco herself identified at her deposition (doc. # 133). We trust that this concession is satisfactory to Dial, since Dial did not file any reply memorandum to quibble with the scope of plaintiff's concession. Accordingly, we grant this defense motion *in limine*, and bar Mr. Ver Halen from offering any testimony concerning Ms. Bianco's inspection of the ladder that deviates from the inspection to which she testified at her deposition.

There are three remaining defense motions *in limine* (doc. ## 98, 99, and 101) which remain in dispute. We address each of them below.

### A.

Dial has moved for an order barring plaintiff's expert, Mr. Ver Halen, from testifying during plaintiff's case in chief to any opinions offered by Professor Musto (doc. # 99). In an amended disclosure, plaintiff disclosed that Mr. Ver Halen based certain of his opinions on the deposition and file materials of Professor Musto; that his own opinions were confirmed by certain of those materials; and that Mr. Ver Halen would express certain criticisms of the testing and opinions of Mr. Ver Halen and Mr. Kyanka. Dial argues that allowing Mr. Ver Halen to refer to Professor Musto's opinions during plaintiff's case in chief would "subvert the order of proof," and the Court should exercise its authority under Federal Rule of Evidence 611(a) to regulate the "mode and order of presenting evidence" to prevent that from happening (doc. # 99, at 1).

We decline to make such a broad brush ruling in advance of trial. The Court's authority to exercise reasonable control over the mode and order of presentation of evidence exists, among other reasons, to "make the interrogation and presentation effective for the ascertainment of the truth, . . . [and to] avoid needless consumption of time" (Fed.R.Evid. 611(a). Allowing Mr. Ver Halen to

19

express his opinions, and to address contrary opinions that the defense will offer through Professor Musto, seems to be well calculated to achieve both ends. Accordingly, we deny this motion *in limine* (doc. # 99), without prejudice to Dial renewing the motion if good reason for it arises at trial on grounds that are not currently apparent.[4]

### B.

Dial has moved to bar plaintiff's expert, Mr. Ver Halen, from offering any testimony concerning alleged design defects in the Model 326 ladder (doc. # 101). In his third deposition session, on March 4, 2008, Mr. Ver Halen testified that the ladder suffered from three design defects: (1) it contained too many locks; (2) an untrained user of the ladder could not clearly identify when a lock was in an unlocked state; and (3) the design lacked a restraining mechanism to prevent the partial or complete disassembly of the bushing and bracket (doc. # 102: Defs.' Mem., Ex. 3 (Ver Halen 03/04/08 Dep.) at 7-8). Dial argues that this testimony was contrary to Mr. Ver Halen's testimony at a prior deposition session, during which he stated that the Model 326 ladder was reasonably safe in terms of design (*Id.*, Ex. 2 (Ver Halen 05/17/07 Dep.) at 28). Dial argues that Mr. Ver Halen's earlier sworn testimony that the ladder lacked any design defect constitutes a judicial admission, which bars him (or Dial) from now claiming a design defect (*Id.*).

At the threshold, we reject plaintiff's argument that Mr. Ver Halen, in his earlier testimony, did not opine that the ladder lacked any design defect which rendered it reasonably safe (doc. # 130:

---

[4]We also note that, as Dial has argued in another motion *in limine* (*see* p. 21, *below*), deposition testimony of a party's retained expert constitutes admissions by a party opponent that are admissible under Federal Rule of Evidence 801(d)(2). Thus, to the extent that Mr. Ver Halen wishes to refer to testimony that Professor Musto has given about his opinions, Dial would be hard pressed to complain that Mr. Ven Halen should not be allowed to do so.

Pl.'s Joint Resp. at 10). In his May 2007 deposition session Mr. Ver Halen was asked the following question, and he gave the following answer:

> Q:   If you assume that, take out that manufacturing defect, this ladder was
>       reasonably safe in design, true?
>
> A:   In terms of the design, yes, I believe it was.

(doc. # 102: Defs.' Mem., Ex. 2 (Ver Halen 05/17/07 Dep.), at 28). Mr. Ven Halen's testimony strikes the Court as a clear statement that the ladder lacked any design defect. Were there any reasonable grounds for confusion about the matter, Mr. Ver Halen dispelled it with his testimony during the March 2008 deposition:

> Q:   Previously you testified under oath that other than the manufacturing
>       defect . . . , the ladder in design was reasonably safe. Do you
>       remember giving that testimony?
>
> A:   Yes.
>
> Q:   Okay. You are now changing that testimony, as well?
>
> A:   Correct.

(*Id.*, Ex. 3 (Ver Halen 03/04/08 Dep.) at 16-17). There is no question that -- as Mr. Ver Halen candidly acknowledged -- he changed his opinion between his second and third deposition sessions on the question of whether the Model 326 ladder had a design defect. But, we disagree with Dial's conclusion that the judicial admission doctrine bars Mr. Ver Halen from offering that changed opinion.

At the threshold, we are not persuaded that the judicial admission doctrine applies to statements by an expert during his deposition testimony. We agree that Mr. Ver Halen's sworn testimony constitutes admissions by a party opponent within the meaning of Federal Rule of

21

Evidence 801(d)(2), which Dial may offer into evidence against plaintiff without running afoul of the Rule prohibiting admission of hearsay evidence. *Dean v. Watson*, No. 93 C 1846, 1996 WL 88861, at *6 (N.D. Ill., Feb. 28, 1996); *In Re Chi. Flood Litig.*, No. 93 C 1214, 1995 WL 437501, *11 (N.D. Ill., July 21 1995). However, not every admission by a party constitutes a judicial admission.

"Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding on the part of the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.'" *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (quoting Michael H. Graham *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition) hereinafter, "Graham at _____"). For example, an admission pursuant to Federal Rule of Civil Procedure 36 constitutes a judicial admission: "[a] matter admitted under this rule is conclusively established . . ." Fed.R.Civ.P. 36(b).

By contrast, sworn statements in interrogatory responses or deposition testimony which may be adverse to that party's position are evidentiary admissions. They do not remove a particular fact of contention, rather, those admissions constitute evidence that, along with all the other evidence, may be considered in determining a fact in dispute. The *Keller* case, which Dial itself cites, makes this point: "[w]hen a party testifying at trial or during a deposition admits a fact that is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission." *Keller*, 58 F.3d at 1199 n.8 (citing Graham at 536-37). None of the authorities cited by Dial require, or even suggest, that an expert's deposition testimony be deemed a judicial admission.

22

We have also considered Dial's effort (doc. # 102: Defs.' Mem. at 5) to analogize Mr. Ver Halen's changed opinion to the "rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). We find that doctrine inapplicable for two reasons. *First*, we are not dealing here with an affidavit submitted after the close of discovery (when Dial no longer had an opportunity to test it through examination) in an effort to manufacture an issue of fact to avoid summary judgment. Mr. Ver Halen's changed opinion was revealed during the course of discovery, and Dial's counsel had ample opportunity to examine him about it during the March 2008 deposition session.

*Second*, even an affidavit submitted on summary judgment that contradicts earlier deposition testimony is "permissible if it is based on newly discovered evidence." *Bank of Ill.*, 75 F.3d at 1172. In this case, plaintiff has explained that Mr. Ver Halen's changed opinion concerning the existence of design defects was based on information that he did not have at the time he expressed the opinion that the Model 326 ladder did not possess any design defects: an opportunity to view an exemplar Model 326 ladder and to review testing of the ladder conducted by Dial's expert (doc. # 130: Pl.'s Joint Resp. at 5-6). Whether that information is sufficient to explain Mr. Ver Halen's changed opinion is, to be sure, fair game for cross examination and argument by Dial at trial. However, it will be for the jury to determine the answer to that question. Neither the judicial admission nor the sham affidavit doctrine warrants removing that question from the jury's consideration. We therefore deny Dial's motion *in limine* to bar Mr. Ver Halen from testifying concerning alleged design defects (doc. # 101).

23

## C.

Dial seeks to bar Mr. Ver Halen from testifying about potential alternative designs to the Model 326 ladder (doc. # 98: Defs.' Motion at 5-7). *First*, Dial argues that Mr. Ver Halen should be precluded from offering testimony that a safer alternative design would involve reducing the number of locks used on the ladder to no more than six. In response, plaintiff states that she will not ask Mr. Ver Halen to testify that "fewer locks are a feasible alternative design," because he will testify "that the number of locks required in a telescoping ladder makes all telescoping ladders unreasonably dangerous" (Pl.'s Joint Resp., at 8). We therefore grant Dial's motion *in limine* to bar any evidence or argument that use of fewer locks would be a feasible alternative design that would render the Model 326 ladder reasonably safe.

*Second*, Dial seeks to bar Mr. Ver Halen from offering evidence that use of a screw or glue to secure the position of the bushing in the bracket would be a feasible alternative design, on the ground that Mr. Ver Halen has failed to offer evidence that this would be effective in rendering the ladder reasonably safe (doc. # 98: Defs.' Motion, at 6-7). We disagree. Mr. Ver Halen testified that using one of these means to secure the bushing would prevent it from moving relative to the bracket, which was an element of what Mr. Ver Halen opined was a step in the causative chain of Ms. Bianco's accident. Therefore, we deny this aspect of the motion *in limine*.

*Third*, Dial also argues, more generally, that Mr. Ver Halen's testimony concerning alternative designs should be excluded because it was offered too late in the case, and as a result Dial has been prejudiced (Defs.' Motion, at 7-8). Again, we disagree. Mr. Ver Halen offered his opinions concerning alternative designs during the period for discovery allowed by the district judge who formerly presided in the case. Dial had an opportunity to explore those opinions Mr. Ver Halen

24

offered during his deposition in March 2008. Dial's argument that it has been unable to locate any witness or other evidence to address the opinions on alternative design does not persuade us that it is the late disclosure that prevented Dial from finding that evidence; Dial has offered no proof that the evidence would have been available earlier had the alternative design testimony been offered earlier. We reject the timeliness of disclosure as a basis for barring plaintiff's alternate design evidence.

Finally, in its reply, Dial raises two arguments it did not set forth in its original motion *in limine*: that Mr. Ver Halen should be barred from (1) testifying concerning an alternative design to make lock latches more visible, and (2) testifying that all telescoping ladders are unreasonably dangerous (doc. # 159: Defs.' Reply, at 6-10). It is improper for a movant to raise new matters for the first time in reply, when the opposing party no longer has an opportunity to respond. For that reason alone, we could summarily reject these newly raised points. However, because we find one of them unpersuasive, without even hearing from plaintiff, but have concerns about the other one, we address them below.

**1.**

Dial argues that Mr. Ver Halen should not be allowed to testify that all telescoping ladders are unreasonably dangerous because it contradicted his deposition testimony in March 2008 (Defs.' Reply, at 9). The testimony that Dial cites concerns an earlier opinion Mr. Ver Halen had offered in a letter, not the March 2008 deposition, in which he stated that all Telesteps's telescoping ladders were unreasonably dangerous by design. Dial argues that testimony that all telescoping ladders are unreasonably dangerous would contradict Mr. Ver Halen's opinion that Telesteps's – but not other – telescoping ladders are unreasonably dangerous. We disagree. Mr. Ver Halen's failure to

25

comment on other telescoping ladders in the letter does not amount to an opinion that the other ladders are reasonably safe. To the contrary, in his May 2007 deposition, Mr. Ver Halen testified categorically that "[t]here is no telescoping ladder that I know of that I would consider to be reasonably safe" (doc. # 98: Dial's Motion, Ex. 2 (Ver Halen 05/17/07 Dep.) at 24-25). We find no inconsistency that is sufficient to bar Mr. Ver Halen's testimony.

We also are not persuaded by Dial's argument that telescoping ladders offer a "unique level of functionality," and so Mr. Ver Halen should not be allowed to testify that they are unreasonably dangerous "without offering a feasible alternative that serves a substantially similar function" (doc. # 159: Defs.' Reply at 9). It is for the jury to determine based on all the evidence whether a defect exists in the telescoping ladder and, if so, whether the "benefits of the challenged design are outweighed by the design's inherent risk of danger." *See* Illinois Pattern Jury Instructions (IPI) Civil: Elements of Plaintiff's Case, "Design Defects" Section 400.00, (2008 Ed.).

Finally, we reject Dial's argument that if Mr. Ver Halen is allowed to testify that telescoping ladders are unreasonably dangerous, then he should be barred from testifying about any alternative design changes (Defs.' Reply, at 9-10). We see no reason that plaintiff should be barred from arguing to the jury not only that telescoping ladders cannot be made reasonably safe, but also that if the jury disagrees, it nonetheless should find that the particular design of the Model 326 ladder was not reasonably safe. The Court therefore denies this aspect of Dial's motion.

**2.**

Dial's arguments concerning Mr. Ver Halen's opinion testimony about the size of lock levers, however, gives us pause. In his deposition testimony, Mr. Ver Halen testified that the lock levers on the Model 326 ladder were too small relative to the locks and should be made bigger to promote

26

improved visibility to the user. We see no reason to bar Mr. Ver Halen from expressing that particular opinion. Mr. Ver Halen also expressed the view that the size of the lock lever should be at least one and one-half inches (doc. # 98: Defs.' Mot., Ex. 3 (Ver Halen 03/04/08 Dep.) at 43). However, Mr. Ver Halen acknowledged that in order to determine the appropriate size of the lock levers, he would want to conduct a study to see what size would be sufficient for users to be able to see the lock levers in appropriate positions (*Id.*, at 40-41). Mr. Ver Halen further testified that he was not aware of any studies that had been done to assess that question (*Id.*, at 42), and that if any such studies were conducted, he might want to make the lock lever smaller than one and one-half inches (*Id.*, at 43-47).

That testimony suggests that Mr. Ver Halen lacks an appropriate basis to offer an opinion as to how much bigger the lock levers should be in some alternative design. Accordingly, we are inclined to grant this aspect of Dial's motion *in limine*. Before doing so, however, we wish to give plaintiff an opportunity to be heard on the matter. Accordingly, the Court defers ruling on this request. In the event that plaintiff has evidence to offer that would show Mr. Ver Halen has an appropriate basis to testify as to the specific size of the lock lever in an alternative design, plaintiff shall present that evidence in a memorandum filed with the Court no later than February 16, 2009. Dial may respond in a memorandum to be filed no later than February 23, 2009.

## CONCLUSION

For the foregoing reasons, our rulings on the motions *in limine* are as follows:

1. The Court GRANTS plaintiff's Motions *In Limine* Nos. 1 (paragraphs 1-18 and 20), 4, 6 (with the qualification set forth at pages 8-9, *supra*), and 11 (doc. ## 106, 109, 111, 116);

27

2. The Court GRANTS in part and DENIES in part plaintiff's Motions *In Limine* Nos. 3 and 7 (doc. ## 108, 112);

3. The Court DENIES plaintiff's Motions *In Limine* Nos. 1 (paragraph 19), 2, 3, 5, 8, 9, 12 and 13 (but subject to the qualification set forth at pages 16-17, *supra*) (doc. ## 106-107, 110, 113-114, 117-118);

4. The Court GRANTS Defendants' Motions *In Limine* to bar evidence of other accidents (doc. # 100), and to bar Mr. Ver Halen from testifying that Ms. Bianco visually inspected the locks prior to the accident (doc. # 103);

5. The Court DENIES Defendants' Motions *In Limine* to bar Mr. Ver Halen from testifying during plaintiff's case in chief concerning Professor Musto's opinions (doc. # 99), and to bar plaintiff from offering evidence of alleged design defects (doc. # 101);

6. The Court GRANTS in part, DENIES in part, and DEFERS ruling in part on Defendants' Motion *In Limine* to bar testimony concerning alternative design (doc. # 98); and

7. The Court DEFERS ruling on Plaintiff's Motion *In Limine* No. 10 (doc. # 115) and Defs.' Motion *In Limine* to bar testimony concerning alternative design (doc # 98) pending further briefing. Defendant shall submit its memorandum concerning Motion *In Limine* No. 10, and plaintiff shall submit her memorandum concerning defendants' Motion *In Limine* on testimony regarding alternative designs, by February 16, 2009. Replies shall be filed by February 23, 2009.

The parties are ordered to instruct their clients and witnesses about these rulings, and to take steps effective to insure that at trial they do not reveal or refer to any of the matters barred by our rulings on the motions *in limine*.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 5, 2009**